MAYOR AND ALDERMEN OF THE CITY OF BROOKHAVEN *v.*
MARTHA L. BAGGETT.

1. CONTRACT. *Exclusive privilege not a lease.*
   The municipal authorities of a town agree with a party that if he will erect
   a market-house for the town, he shall, as his compensation therefor, have
   the occupancy thereof for twelve years, with the exclusive right to keep the
   same as a town market under the ordinances of the town requiring huck-
   sters and vendors of marketable commodities to rent stalls from him at a
   fixed price. Held, that this contract was not a lease, and was not made
   such by being referred to subsequently in writing by the parties as a lease.

2. IMPLIED WARRANTY. *Quiet enjoyment. Limitation.*
   There can be no recovery as for a breach of an implied warranty for quiet
   enjoyment, occurring after the termination of the lessor's term. The law
   never implies a warranty in a lease except so long as the lessor has the term.

APPEAL from the Circuit Court of Lincoln County.

HON. J. B. CHRISMAN, Judge.

The facts are stated in the opinion.

*W. P. Cassedy,* for the appellants.

1. The mayor and aldermen had no power to make either the first
or second contract, and they were void. The power of a municipal
corporation is only such as the charter confers on them, either ex-
pressly or as incidental to its very existence, and so necessary to the
enjoyment of some special grant that without it that right would
fail. *Gaines* v. *Coats,* 51 Miss. 335; *Sykes* v. *Mayor of Colum-
bus,* 55 Miss. 115.

2. The right to establish markets is a branch of the sovereign
power, and the right to regulate them is necessarily a power of mu-
nicipal police. *Mayor and Aldermen of Jackson* v. *Bowman,* 39
Miss. 699; *Patty* v. *Macon,* 57 Miss. 410; *Municipality* v. *Cut-
ting,* 4 La. An. 335; *Waterman* v. *Philadelphia,* 33 Pa. 202–209;
1 Dillon on Municipal Corporations 317.

3. A municipal corporation cannot create a monopoly in any
business. And when the effects of their acts are such as to have
this effect, they are void. *Canal Co.* v. *Railroad Co.,* 11 Leigh
Va. 42; *Galo* v. *Kalamazoo,* 23 Mich. 344; *Chicago* v. *Rumpf,*

45 Ill. 90.   The effect of the contract was to create a monopoly in Mrs. Baggett for a term of years.

4. A corporation could not do anything more than a private person in the way of making contracts.   The conveyance of land for a term of years longer than one year was required by the Code of 1857, page 309, Art. 19, to be in writing, signed and sealed, or should not be binding.

5. The extension of that which is void is a nullity, and especially ought this to be true when it is in relation to the acts of a municipal corporation which is from time to time changing its representatives and giving control to persons who are not presumed to know anything about the terms of an invalid or void contract of their predecessors.   If it should have the effect of breathing life into this dead body, it would make a contract rest partly in parol and partly in writing, which cannot be done. *Kerr* v. *Walker,* W. (1 Miss.) 115; *Young* v. *Jackaway,* 9 S. & M. 212 ; *Brantly* v. *Carter,* 4 Cush. 282.   An implied covenant will not be allowed in a void lease.   46 Ill. 17.

6. The appellees rely on the last contract as being itself a lease, and contend that the covenant for quiet enjoyment is implied in the use of the word *lease.*   It is true, in a regular lease the use of this word, as well as others, would imply the covenant for quiet enjoyment, but this is not a lease in itself.   It is only a contract to extend a lease that is recognized to be then in force and to be for eight years.   And for the implied or express covenants it must depend on the lease itself and not upon any collateral contract or agreement.   In construing an agreement the intention of the parties is the governing rule and the words themselves are resorted to in order to arrive at the true meaning of the parties. Wood's Landlord and Tenant 484 ; *Goosy* v. *Goosy,* 48 Miss. 210; *Levy* v. *Dyess,* 51 Miss. 505.   The words used in this contract do not show that the parties intended the contract of December 30, 1872, as the lease.   They recognized that there was *an original* lease that was in existence, and it was their *intent* that this lease should be *extended* for eight years, making it operative until 1888 instead of expiring in 1880.   Did the parties themselves intend that

this instrument should be a lease ? If so, it would have been differently worded. There can be no doubt of their intent. There is no implied warranty in a mere agreement to lease. Wood's Landlord and Tenant 565.

*A. C. McNair*, on the same side.

1. Municipal corporations have such powers only as are expressly granted, or are necessarily implied from the express grant. *Field v. Des Moines*, 39 Iowa 575 ; *McPherson v. Foster*, 43 Iowa 48 ; *Johnston v. Louisville*, 11 Bush. 527 ; *Williams v. Davidson*, 43 Texas 1.

2. Again, the power to establish and regulate markets is a continuing one, and markets once established may be abandoned or changed at the pleasure of the corporation, or the action of the council in this behalf be controlled. Third edition of Dillon on Municipal Corporations, Vol. I, 385, note 1 ; *Gall v. Cincinnati*, 18 Ohio St. 563.

3. The right to establish a market includes the right to abandon it or shift it to another place when the public convenience demands it, and of this the council is the judge. Dillon on Municipal Corporations, Vol. I, § 384.

4. The power of making the contracts of the character of this one, was not granted in express words, nor was it necessarily or fairly implied in or incident to the powers expressly granted, nor was the making of this character of contract essential to the establishment of the market or the building of the house. *Smith v. City of Newberne*, 70 N. C. 14 ; Dillon on Municipal Corporations, § 89 ; *Cook Co. v. McCrea*, 93 Ill. 236. If there is a fair, reasonable doubt of the existence of the power it is denied.

5. In order to create the relation of landlord and tenant, the lessor must convey a less estate than is vested in him. I submit that the facts disclosed show that such was not done by the town authorities. The declaration discloses that Millsaps built the market-house on the property of the railroad company, the place selected by the board of mayor and aldermen, and that the plaintiff and defendant were evicted by the railroad company. Of these facts the plaintiff and Millsaps were cognizant. I submit

then that, as the contract was made before the building of the market-house, with full knowledge of the facts, nothing more passed or could in law pass to Millsaps and plaintiff than the defendant had, or that the whole estate of defendant passed. If this is true, then it was an assignment and not a lease, though the parties may have so termed it. Did the defendant acquire the title to the market-house until the same was paid for? Was it not the property of Millsaps and Mrs. Baggett? The facts show that the town was a tenant at will of the railroad company, and it is common learning, I take it, that a tenant at will possesses no demisable estate, and the effort to do so was futile. *Quære*—Will the law from such a state of facts imply a covenant of quiet enjoyment? There was none expressed.

*Sessions & Cassedy* and *R. H. Thompson,* for the appellee.

The terms of the deed are (record, p. 8), the town " doth hereby agree to extend the original lease of said property to said Martha L. Baggett for the term of eight years, thus making her lease remain in full force up to the first day of March, 1888."

Now the use of the word " lease " alone creates a covenant in law, and such a covenant implied from the use of the technical word *alone* is an implied lease. *Maule* v. *Ashmead,* 20 Penn St. 482; *Ross* v. *Dysart,* 33 Penn St. 452; Tiedman on Real Property, § 186; Taylor's Landlord and Tenant, § 252, and all the authorities except one New Hampshire case hold that the word lease implies a covenant for quiet enjoyment.

While in one sense an express covenant may be said to be implied, not from the use of a technical word, but implied from the legal construction of the instrument, all implied covenants are not mere covenants *in law.* Much confusion seems to abound in the books from the fact that the expression, "implied covenants," is used in two distinct and different senses.

This whole matter is ably discussed and explained in *Williams* v. *Burrell,* 1 Manning, Granger & Scott 402 (50 Eng. C. L. 402), the cream of which decision is to be found in a note to Rawle on Covenants for title (top page), 470–1–2.

In every case it is always a matter of construction to discover

what is the sense and meaning of the words employed by the parties in the deed.

In the sense that the covenant in suit is not expressed in the form in which a lawyer would be likely to incorporate the idea in a deed, it may be true that the covenant counted on is implied, but it is implied from a construction of the instrument, and as said by the authority above quoted, "it differs nothing in its operation or legal consequences from an express covenant;" it is not implied from any technical word alone, and is not a mere covenant in law. See note 1, Taylor's Landlord and Tenant, § 252; *Lovering* v. *Lovering*, 13 N. H. 518 (contrary to weight of authority on one point, but pertinent on this question).

Addressing ourselves to a consideration of the principles upon which such covenants are determined to be or not to be embodied in deeds, we find express covenants are such as are created by the words of the parties declaratory of their intention. No precise or technical language is necessary for the purpose; it may be put in the form of a condition, an exception, or even a recital. Taylor's Landlord and Tenant, § 246 *et seq.* The whole scope and purpose, and the very words of the instrument sued on show that it was contemplated that defendant's obligations would not cease until 1888.

In the case of *Penn* v. *Preston*, 2 Rawle (Penn.) 14, it was decided that a mere recital that the power of attorney under which the lease was made was "*intended to be recorded*" was equal to a covenant on the part of the grantor that he would record the power of attorney in a reasonable time. The case of *Barfoot* v. *Friswell*, 3 Keb. 465, though printed in black letter, is decidedly in point. See notes and authorities cited in Taylor's Landlord and Tenant, § 246; Tiedman on Real Property, § 187; Smith's Landlord and Tenant, marg. p. 211, top p. 268; Taylor's Landlord and Tenant, § 306; *Ross* v. *Dysart*, 33 Penn. St. 452; *Moore* v. *Webber*, 71 Penn. St. 429; *Schilling* v. *Holmes*, 23 Cal. 230; *Schuylkill, etc., R. R. Co.* v. *Schmoele*, 57 Penn. St. 273, and in *Hamilton* v. *Wright's Adm'r*, 28 Mo. 205, it is shown that the doctrine that a covenant in law shall not be extended to make one convey more than he possessed had its origin in

the case of *Swan* v. *Searles*, Dyer 257, and the doctrine is limited to the termination of a life estate by death.

By sec. 5 of the charter of the defendant town it is provided— " *Be it further enacted:* That the mayor and aldermen of said city shall have full power, and it shall be their duty, to cause to be kept a decent and orderly market in said town, and to regulate the same by ordinance." This section empowers and contemplates, as is apparent from its terms, that the board of mayor and aldermen shall cause to be kept a decent and orderly market through instrumentalities other than themselves ; they are authorized to act in the matter by agents, tenants, etc.—in short, they are authorized to determine and adopt the most suitable and efficient means. They did determine the most suitable and efficient means to be the tenant system adopted by them. Power to cause to be kept a decent and orderly market implies necessarily the power to own some place, some piece of land, upon which the market is to be kept, and power to contract and to be contracted with in respect to that place—and it seems that the pretense that the contract is *ultra vires* is without any force whatever. This court has decided the exact question, or rather one in exact analogy. *Mahon* v. *City of Columbus*, 58 Miss. 310.

CHALMERS, J., delivered the opinion of the court.

In October, 1867, the town of Brookhaven entered into a contract with R. W. Millsaps by which it was agreed that Millsaps should erect a market-house for the town, and for his compensation should have the occupancy thereof for twelve years under the existing regulations and ordinances with reference to the manner of its control and use. It was contemplated by both parties that the building would be erected on the right of way of the N. O. & Jackson R. R., which ran through the centre of the town, and accordingly the municipal authorities sought and obtained the consent of the railroad authorities to its location on their right of way. This consent was evidenced by a letter written by the general superintendent of the railroad company, stating that he had " no objections " to its being so built. Under this contract Millsaps built the house and entered

upon the business of keeping the market, letting out the stalls therein to hucksters and others for yearly or monthly rents.

In a short time he sold out and transferred all his rights to Mrs. Baggett, whose husband had been the mayor of the town, who had obtained from the superintendent of the railroad the privilege of building upon the right of way of the railroad company. Mrs. Baggett continued without interruption in the exercise of the rights acquired by the transfer until 1872, when the mayor and aldermen made a change in the market ordinances which she thought detrimental to her interests, for which she brought suit against the town for damages alleged to have been sustained by reason of such change in the ordinances. This suit was compromised by an agreement upon her part to surrender to the town the use of a portion of the building for the occupation as an office by the mayor, and an agreement upon the part of the town authorities, that her rights under the original contract should be extended for six years longer, that is to say, until 1st of January, 1888.

This contract was in writing, signed and sealed by Baggett and wife, and by the mayor and aldermen.

In the written contract of compromise the original contract between Millsaps and the town is spoken of as a " lease " by the former from the latter, and the stipulation is that this " lease should be extended to January, 1888."

In 1882 the N. O. & Jackson R. R. Co., or rather their successors, the C., St. L. & N. O. R. R. Co. brought an action of ejectment against the town and against Mrs. Baggett, and evicted them from the premises upon the ground that they were mere licensees at will of the railroad company, with right only to hold during the pleasure of the latter.

Mrs. Baggett has now brought the present action against the town to recover damages for the breach of an implied warranty for quiet enjoyment contained in the alleged lease of the premises to her by the town, and has obtained a judgment for one thousand dollars damages for such breach of warranty.

This judgment cannot be sustained for several reasons. In the first place, there was no lease between the parties, and calling the

original contract entered into with Millsaps a " lease," as was done in the written compromise with Mrs. Baggett, did not make it such. The town owned no property to lease, and did not assume to lease any. It simply agreed that if Millsaps would build a house to be used as a market-house for the town, he should have the privilege of so using it for twelve years, at the end of which time it would become, so far as he was concerned, the property of the town.

All that the town granted or that he received was the exclusive right or privilege of keeping this house as a town market, under ordinances which required all hucksters and vendors of marketable commodities to rent stalls from him at fixed prices. If the town had erected a market-house elsewhere or authorized another to do so, it would have probably subjected itself to an action for damages, but in no sense was it a lessor or he a lessee.

But even if there had been a formal lease, there could under the circumstances of this case have been no recovery as for breach of an implied warranty for quiet enjoyment, occurring after the termination of the lessor's term, there being no express warranty whatever. The law never implies a warranty in a lease except so long as the lessor has a term. It is upon this principle that a life tenant is only held upon an implied covenant so long as his own tenancy lasts; when that is gone, his implied covenant is gone. By implication, the fact that he has made a lease binds him so long as his own estate lasts, and no longer.

In this case both parties contracted with full knowledge and notice of the town's being a mere licensee of the railroad. Rawle on Covenants for Titles, 468 *et seq.* and notes.

*Judgment reversed. Action dismissed.*